## Daniel, et al. v. Blankenship.

(Decided November 14, 1917.)

## Motion to Dissolve Injunction.

1.  Elections—Primary Elections—Filing Certificate of Nomination.—
    A candidate for a nomination, to whom the county court clerk
    issues a certificate of nomination, in accordance with subsection
    9 of section 1550, Kentucky Statutes, as well as one to whom the
    board of election commissioners issues a certificate of nomination,
    in accordance with subsection 26, of section 1550, supra, must, in
    order to be entitled to have his name printed upon the ballots
    to be used at the November election, file his certificate of nom-
    ination, with the clerk of the county court, not less than fifteen
    days before the day of the November election.

2.  Elections — Primary Elections — Certificate of Nomination. — To
    issue a certificate of nomination to a candidate, as required by
    subsections 9 and 26, of section 1550, Kentucky Statutes, means
    to properly make out and sign the certificate, and to deliver it
    into the control of the candidate.

3.  Elections—Primary Elections—Certificate of Nomination.—To file
    certificate of nomination with the clerk of the county court, as re-
    quired by section 1456, Kentucky Statutes, and subsection 26, of
    section 1550, Kentucky Statutes, means to deliver it to such clerk,
    accompanied by an expression of a desire upon the part of the
    candidate, that it be filed, and it then becomes the duty of such
    clerk to endorse the fact of its filing over his signature upon the
    certificate.

4.  Elections—Primary Elections—Certificate of Nomination.—The
    nominee, being the rightful custodian of his certificate of nom-
    ination, it is his duty to see that it is filed with the clerk of the
    county court not less than fifteen days preceding the November
    election, if he is a candidate for an office within the choice of the
    voters of a county, or of a district of a county, and if he neglects
    to file his certificate within the time fixed by law, he cannot obtain
    a mandatory injunction to require the clerk to cause his name
    to be printed upon the ballots to be used at the November election.

5.  Elections—Primary Elections—Certificate of Nomination—Statutes.
    —Subsection 36, of section 1550, Kentucky Statutes, provides that
    a primary election shall be conducted substantially as now pro-
    vided by law, in case of regular elections, and any omission in sec-
    tion 1550, supra, shall be supplied as nearly as practicable from
    the statutes governing the November elections, and the duty of
    the holder of a certificate of nomination, which is issued by the
    county court clerk, as provided by subsection 9 of section 1550,
    supra, is governed by section 1456, Kentucky Statutes, which is
    one of the statutes governing November elections.

J. S. GLENN, G. B. LIKENS and BEN D. RINGO for plaintiffs.

W. P. SANDIDGE and M. O. HEAVRIN for defendant.

THOMAS W. THOMAS, Amicus Curiae.

OPINION BY JUDGE HURT—Dissolving injunction.

The plaintiffs, H. G. Daniel and Guy E. Robertson, S. E. Bennett, Ozna Schults, D. Melvin Stewart, J. S. Glenn, T. B. Tichenor, Newton R. Baize, J. R. Miller, Joseph Smith, R. C. Tichenor, R. Y. Hagerman, B. W. Taylor, and Isaac Keown, filed their declarations as candidates for the nomination of the Democratic party, at the regular primary election, held in the year 1917, for the various county offices, and district offices of the county of Ohio, to be voted for as candidates for the respective offces, for which they sought the nominations, at the following regular November election. The six first named were the only candidates for the respective offices, for which they sought the nominations of their party, before the primary, and when thirty days next before the day of the primary election had passed, certificates of nomination were issued to each of them by the clerk of the county court, as directed by subsection 9, of section 1550, Kentucky Statutes, governing the holding of party elections and making party nominations. As appears from the record, the clerk delivered to each of them the certificate of nomination to which he was entitled, directly after same was issued. Neither of them ever filed his certificate in the office of the county court clerk, or made any disposition of it.

The remaining eight, above named, parties had opposition for the nomination, which they, respectively, sought, but, each of them having received a majority of votes, the board of commissioners, in due season, prepared and signed for each of them a certificate, showing his nomination as candidate, for the office, which he sought, in accordance with subsection 26, of section 1550, Kentucky Statutes. Neither of these parties, so far as the record shows, however, ever requested the board of election commissioners to deliver to him his certificate, and never filed or caused it to be filed with the county court clerk, and, in fact, it does not appear, that either of them was ever in possession of his certificate. The board of election commissioners, in place of delivering the certificates to the parties, who were entitled to them, placed them within the leaves of a book, wherein the record of the proceedings of the board of election commissioners was kept, and lodged the book in the office of the county court clerk, and the clerk deposes, that he did not have any knowledge of the whereabouts of the

certificates, until within fifteen days, preceding the election, and this statement is not contradicted.

The certificates of nomination, not having been filed with the clerk of the county court, fifteen days preceding the regular November election, the clerk refused to cause the names of the nominees to be printed upon the official ballot, to be used at the November election, as candidates for the offices for which they had been nominated, under the emblem of the Democratic party, or otherwise.

On the 2nd day of November, the plaintiffs, H. G. Daniel, W. E. Ellis, and J. S. Casebier, instituted this action in the Ohio circuit court, against the defendant, W. C. Blankenship, who was the clerk of the county court, and sought a mandatory injunction to require the defendant to cause the names of all the nominees, above mentioned, to be printed upon the official ballots, under the emblem of the Democratic party, as candidates for the offices for which they had been nominated, respectively. It will be observed that the plaintiff, H. G. Daniel, was one of the nominees for an office of a district of the county, but the plaintiffs, Ellis and Casebier, were not nominees, but were citizens of Ohio county, and entitled to vote at the November election, and claimed, that the right to have the parties' names printed upon the ballots, as candidates, was a matter of public and common interest to all citizens of the county, and for that reason they were entitled to sue for that purpose.

The regular judge of the judicial district in which Ohio county is situated, being absent from the district, the plaintiffs, after having given notice of their intention, made a motion before another circuit judge, in vacation, who was in an adjoining county, to grant a mandatory injunction against the defendant, requiring him to cause the names of all the above mentioned nominees to be printed upon the ballots to be used at the regular November election, as prayed for in the petition. Upon the hearing of the motion, it was sustained and the injunction granted. Thereupon, the defendant, on the following day, which was November 2nd, having given notice, made a motion before me, as a judge of the Court of Appeals, to dissolve the injunction.

Upon the hearing of the motion to dissolve the injunction, the right of the plaintiff, H. G. Daniels, to maintain the action to require the clerk to cause to be printed upon the ballots, the names of any of the parties, other than himself, and the right of the plaintiffs, Ellis and Casebier, as citizens and voters of the county,

to maintain the suit for any purpose, was questioned, but it is not considered necessary to determine that question, as the decision of another issue, which applies to the rights of all the nominees, alike, fully disposes of the entire controversy.

For the plaintiffs, it was insisted, that, it was the duty of the county court clerk to cause the names of the nominees, above mentioned, to be printed upon the official ballots for the use of the regular November election, although the certificates of nomination had never been filed with him; while for the clerk, it was insisted, that, he was without authority of law to place the names upon the ballots, when the certificates of their nomination had not been filed, with him, fifteen days preceding the day of the regular November election.

Previous to the enactment of the primary election law of March 5, 1912, and which, with its amendments of March 23, 1914, is now section 1550, Kentucky Statutes, the general election law governing the holding of the regular November election, controlled and prescribed the manner in which candidates' names could be placed upon the ballots. Section 1453, Kentucky Statutes, provided that the county clerk should cause to be printed on the respective ballots "the names of all candidates nominated by the convention and primary election of any party that cast two per cent. of the total vote of the state at the last preceding general election, as certified to the said clerk by the presiding officer and secretary of said convention, or in the case of a primary election, by the secretary and chairman of any district committee, and, also, the names of any candidates for any office when petitioned so to do by electors, qualified to vote for such candidates, etc." Section 1456, Kentucky Statutes, provides, that, "Certificates and petitions of nomination herein directed to be filed with the clerk of a county shall be filed not more than sixty days and not less than fifteen days before the election." Section 1457, Kentucky Statutes, provides that "Not less than twenty days before the election of such officers as are required to file their certificates of nomination with the Secretary of State, said Secretary of State shall certify, etc." It will be observed, that by the provisions of these statutes, the time preceding the election, when the certificates and petitions of nomination are required to be filed with the county court clerk to authorize the placing of the name of a candidate upon the ballots for an office within the choice of a county, was definitely fixed at not more than

sixty days preceding the election and not less than fifteen days theretofore.  It will, also, be observed, that neither of these statutes expressly designates, by whom, a certificate of nomination by a convention or primary election should be filed with the clerk of the county court, although the reading of section 1457, *supra,* expressly points out whose duty it was under that section to file a certificate of nomination with the Secretary of State, as that section fixed the duty upon the candidate himself.  In construing section 1456, *supra,* in the light of sections 1453, 1454, 1455 and 1457, *supra,* all of which are still in force and unrepealed, except to the extent of the provisions made by them as to the issuing of certificates of nominations by conventions and primary elections, two things were definitely determined by the adjudications of the Court of Appeals, one of which is, that the provision requiring the certificate of nomination to be filed with the county court clerk, not less than fifteen days preceding the election, to entitle the candidate to have his name placed upon the ballot, is mandatory, and if the certificate is not filed through neglect of the candidate, the omission is without remedy.  The other thing determined is, that it is the duty of the candidate to see that his certificate is filed with the county court clerk within the prescribed time.  In Hollon v. Center, etc., 19 R. 1134, certain candidates were nominated at a primary election for various county offices, and the certificates of their nomination were issued by the chairman and attested by the secretary of the county committee of their party.  Some of the candidates filed their certificates with the county clerk more than sixty days before the regular election; others of them filed their certificates of nomination less than sixty days, but more than fifteen days before the election; while others failed to file their certificates until within less than fifteen days before the election, and others failed to file their certificates at all.  The Court of Appeals held, that the provision of the statute, requiring the certificates to be filed not less than fifteen days before the election was mandatory, and the candidates who had failed to do so were not entitled to have their names printed upon the ballots to be used at the election, although it held that the provision of the statute, which provided that the certificates should not be filed more than sixty days preceding the election, while it should be obeyed, was not mandatory.  In that case the court said:

"But the two appellees, who did not file their certificates at all were manifestly not entitled to have their names put upon the ballots. Nor, in as much as there are obvious reasons for requiring the certificate of each nominee to be filed not less than fifteen days before the election, were the two, who failed to comply with that provision, that we regard mandatory, so entitled. The same reason does not, however, apply to that one, who filed his certificate more than sixty days before the election, because if it was actually in possession of the clerk not more than sixty nor less than fifteen days before the election, it is not material where it may have been kept or lodged in the meantime."

With reference to knowledge possessed by the clerk with regard to the primary election and its results, the court, in the case, *supra,* said:

"The thing intended to be done by the two sections (1453, 1456) in case of a party convention or a primary election, is the printing on the respective ballots the names of the candidates of whose nomination the county court clerk has proper and satisfactory evidence. But the only mode provided for showing the fact is a certificate of the presiding officer and secretary of such convention, or in case of a primary election, by the chairman and secretary of a county or district committee of the particular party. And that main and essential fact, in our opinion, was not intended by the legislature to be shown in any other way; otherwise, the plan adopted for properly placing before the electors candidates to be voted for would be rendered useless."

In Brodie v. Hook, 135 Ky. 88, a candidate was nominated by a convention, but by oversight, the chairman and secretary of the convention omitted his name from the list of candidates nominated, to which list they certified, and the omission was not discovered until within fifteen days preceding the election, although the certificate had theretofore been filed with the county clerk. The candidate sought a writ of mandamus to compel the clerk to cause his name to be printed upon the ballot, and the Court of Appeals, in denying him the relief and in discussing the question as to whose duty it was to file the certificate of nomination with the clerk, said:

"The statute makes it obligatory upon all persons, who desire to be candidates, at an election, to see to it that their certificates of nomination or the necessary papers, entitling them to have their names placed on the ballots to be voted, are filed not less than fifteen days

before the election. If they neglect to do this, they must suffer the loss."

In the same opinion, quoting the latter clause of section 1456, *supra,* the court said:

"If this language is mandatory, the clerk had no right to place appellant's name upon the ballot to be voted at the election to be held November 2, 1909, but if the statute is merely directory, he had the right to put it on."

The court, in the opinion, however, arrived at the conclusion, as in Hillon v. Center, etc., *supra,* that the provision of the statute. requiring the certificates to be filed with the clerk not less than fifteen days before the election was mandatory and could not be avoided, and, quoting from 15 Cyc. 338, where it is said:

"Statutory provisions in regard to the time of filing certificates of nomination are mandatory, and a certificate offered after the time limited is properly rejected."

In Brodie v. Hook, 160 Ky. 407, was where a candidate had instituted an action for damages against the chairman and secretary of a convention, at which he had received a nomination, for negligently failing to certify his name and to file his certificate with the clerk of the county court. The Court of Appeals, holding that he had no cause of action, among other things, after quoting from sections 1453 and 1457, *supra,* said:

"The law placing the burden of filing the certificate upon Brodie (the candidate) it is incumbent on him to see that his certificate was properly filed, and though Haswell and Kincheloe voluntarily agreed to file his certificate for him and attempted to do so, it was still incumbent on him to see that a proper certificate had been filed. The primary duty resting upon him, he can not complain that his friends, who acted voluntarily for him, did not sooner discover a mistake, which he himself did not discover."

To file a certificate of nomination with the county court clerk, as provided by the statutes upon the subject, evidently means, no more nor less, than to deliver it into the custody of the clerk, accompanied with the communication to the clerk, of a desire on the part of the candidate, that it be filed. The meaning ordinarily attached to filing a paper with a clerk of a court is, that the officer shall endorse thereon, over his signature, the date and fact of its filing, but if the clerk should fail to make such an endorsement, nevertheless the certificate would be filed, in contemplation of the election law, because when

the candidate has presented it, accompanied with the re-
quest that it be filed, he has performed his duty and has
done all, which it is within his power to do, and he could
require the clerk, by proper legal proceedings, to receive
and to properly endorse it, or to place his name upon the
ballots.

The primary election law and its amendments, which
now constitute section 1550, *supra,* and its 37 subsections,
provides, in some instances, a different method, by which,
the candidate must secure a certificate of nomination for
an office, than those provided by the general election law,
theretofore, which theretofore, controlled the method to
be adopted by a candidate to secure the printing of his
name upon the ballots to be used at the regular election.
Under the former law, a certificate of nomination, re-
sulting from the holding of a primary election, was
signed by the officers of the party, under whose authority
the primary election was held, while a certificate of nom-
ination obtained, as the result of a primary election, un-
der section 1550, *supra,* and its subsections, must be
signed and issued by the board of election commission-
ers of the county, if the candidate for the nomination had
opposition, at the primary; or by the clerk of the county
court, if he had no opposing candidate. Under the former
law, as we have seen, it was the duty of the candidate to
file his certificate of nomination, which was the result
of the primary election, and which was signed by the
officials of his party, with the county court clerk not less
than fifteen days before the November election, to entitle
the candidate to have a place upon the ballot in the latter
election. An examination of subsection 26, of section
1550, *supra,* will show that there is no difference between
the manner by which the holder of a certificate of nomi-
nation, by a primary election held under that statute,
is to secure the printing of his name upon the ballot at
the November election, and the manner in which the
nominee of a primary election, held before the enactment
of the primary election law, could obtain a place upon
the ballot at the regular election. The present statute
is more definite as to whom the certificate shall be de-
livered than the November election law, in that section
1453, *supra,* provided, that the officials of the party
should certify to the clerk of the county court the nomi-
nations made by a primary election held under their au-
thority, while the primary election law, now in force,
provides that the certificates of nomination, as the result
of the primary election, where the candidate has opposi-

tion for the nomination, shall be issued by the board of canvassers to the persons, who are entitled to the nominations. Subsection 26, of section 1550, *supra*, provides the present manner of obtaining a certificate of nomination at a primary election, and what shall be done with the certificate in order to entitle the nominee to a place on the ballot, and so much of that section, as is pertinent to the question, is as follows:

"On the third day after the close of any primary nominating election, the county election commissioners of each county shall proceed to canvass the returns of said primary election and tabulate the same. The tabulation of the votes for all offices for which the nomination papers are required to be filed in the county court clerk's office shall be on another separate sheet of paper for each political party and shall be filed in the county court clerk's office immediately after the canvass of the returns and tabulation of the votes by said election commissioners; and certificates of nomination shall immediately issue to the persons receiving the greatest number of votes for the office for which they were candidates. And said certificate shall, not less than fifteen days, next before the day, on which the general November election is held, be filed with the county court clerk. Such tabulation of votes for nominations for candidates for office, whose nomination papers are now or may hereafter be required to be filed in the office of the Secretary of State, shall be made on one separate sheet for each political party, and shall be immediately transmitted, under seal, to the Secretary of State in like manner as other election returns are transmitted to him. On the fourteenth day after such primary nominating election the state board of election commissioners shall meet at the capitol and canvass the returns of said primary election that have been certified and filed with the Secretary of State for all officers where the returns are required to be certified and filed with the Secretary of State for all the political parties entitled to participate in such primary nominating election; and after they have completed the tabulation and canvass of the returns of said primary nominating election, they shall immediately certify to the same, and they shall issue to that candidate of each political party receiving the highest number of votes for the office for which he was a candidate a certificate of nomination, which certificate shall, not less than thirty days next before the day on which the general November

election is held, be filed in the office of the Secretary of State. . . ."

It will be observed, that the provisions, of the foregoing section, require the board of election commissioners of the county, where nominations are for offices for which the nomination papers are required to be filed in the county court clerk's office, to issue certificates of nomination to the parties, who receive the nominations, and, in instances, where the nomination papers are required to be filed in the office of the Secretary of State, the state board of election commissioners must issue a certificate of nomination to the candidate of each political party receiving the highest number of votes, and, in the first instance, the certificate of nomination must be filed with the county court clerk, not less than fifteen days preceding the day of the November election, and, in the second instance, with the Secretary of State not less than thirty days preceding the November election. This statute is as mandatory, in its character, as section 1456, *supra,* as regards the time and place of the filing of the certificate of nomination. To issue to one a certificate of nomination can have no meaning, except that the certificate of nomination must be made out, signed and put into the control of the person, who received the nomination. The nominee is then the custodian of the certificate, and if it must be filed with the county court clerk, it surely becomes the duty of the candidate to do so, as it is within his power and under his control, and as said in Brodie v. Hook, *supra,* "if he neglects to do so, he must bear the loss." The provisions of subsection 26, of section 1550, *supra,* are similar in their requirements, as to filing the certificates of nomination, to the provisions of section 1456, *supra,* and were adopted by the legislature in contemplation of the construction, which had been placed upon sections 1453 and 1456, *supra,* by the courts, and it appears, that, if the legislative authority had desired to change the construction which had been placed upon the former statutes by the courts, relating to the duty of the candidate nominated, to file his certificate, with the county court clerk, it would have required a different disposition to be made of the certificate, when issued, but, instead, it required specifically, that the certificate should be issued to the candidate, entitled to the nomination.

Since the enactment of section 1550, *supra,* in the case of Dobbs v. Crecelius, 166 Ky. 153, William Allen received the nomination of his party for representative, in

the legislature, from a district composed of two counties, and where it was necessary for the state board of election commissioners to issue the certificate of nomination, which it did, and Allen having failed to file his certificate of nomination with the Secretary of State thirty days preceding the November election, the Court of Appeals held, that he was not entitled to have his name printed upon the ballots to be used at the November election.

On March 23, 1914, section 1550, *supra,* was amended, and by one of its amendments, it was provided, that, in the instance, where there is but one candidate having filed application and declaration for a place on the primary ballot, as a candidate for a nomination, at the expiration of the time for filing applications and declarations, the officer, with whom such papers are filed, shall issue to such candidate a certificate of nomination, which shall have the same "force and effect" as the certificate of nomination, provided to be issued by the canvassing officers, as directed by subsection 26, of section 1550, *supra.* This amendment directs the certificate of nomination issued by the clerk to be issued to the candidate, who thereby becomes the custodian of it, and the duty is imposed upon its holder, to do whatever thereafter is required, to entitle his name to a place upon the ballot at the November election. It is true, that this amendment does not specifically require such certificate to be thereafter filed with the county court clerk, but it provides that it shall have just the "same force and effect" as the certificate has, which is issued by the board of election commissioners. A certificate, issued by the board of election commissioners, has no force or effect in getting the name of the holder placed upon the ballots, unless it is thereafter filed with the county court clerk, but when so filed, it does have the force and effect of requiring the name of the holder to be printed upon the ballots to be used at the November election. There could scarcely be any reason presented, why the nominee holding a certificate issued to him as the result of a primary election, by the board of canvassers, should be required, in order to get his name placed upon the ballots at the November election, to file it with the county court clerk, not less than fifteen days before the election, while the holder of a certificate of nomination, issued by the clerk of a county court, thirty days before the primary election, should not be required to file his certificate with the county court clerk, to obtain a place upon the ballot.

Subsection 36, of section 1550, *supra,* provides as follows:

"Except as herein otherwise provided, primary elections under this act shall be conducted substantially as now provided by law in case of regular elections. Any omission in this act shall be supplied as nearly as practicable from the statutes governing the November elections. . . ."

Section 1456, *supra,* is a part of the law governing the conduct of regular November elections, but by reason of subsection 36, of section 1550, *supra,* the primary election law and the law, theretofore, in force, governing the conduct of the November election must be read together, and such omissions, as may be in the primary election law, must be supplied from the law governing the November election, as nearly as may be practically done. Heitzman v. Voyers, 155 Ky. 39. Hence, in the absence of any specific provision, in the primary election law, directing what shall be done with the certificates of nomination, which are issued to the nominees by the county clerk, in accordance with subsection 9, of section 1550, *supra,* when the statute provides, that they shall have the "same force and effect" as those issued by the board of canvassers, in accordance with subsection 26, of section 1550, *supra,* it seems that by the express provisions of subsections 36, of section 1550, *supra,* such certificates must be controlled by the provisions of section 1456, *supra,* which expressly require, that they be filed with the county clerk not less than fifteen days, preceding the November election. Section 1456, *supra,* is in nowise contrary to nor contradictory of any provision of section 1550, *supra,* and is still in full force and effect. While subsection 12, of section 1550, *supra,* requires the county clerk to keep a book and to enter therein, on different pages of the book for the different political parties, subject to the provisions of the law, the title of the office sought, and the name and residence of each candidate for a nomination in the primary election, the name of his political party, and the date of receiving his petition, and while subsection 15, of section 1550, *supra,* requires the county court clerk, twenty days before the primary election to make publication of the names of all persons, who are candidates for nomination, and the offices, which they are seeking, the law, nowhere, imposes the duty upon the clerk of making any record of the certificates of nomination, which he is called upon to issue under

subsection 9, of section 1550, *supra,* nor is it anywhere provided, that he shall be a custodian of such certificates, until after they are filed with him by the candidate and the reason of the requirements of subsection 12, are fully shown by the requirements of subsection 15. While, it is insisted, that the legislature did not intend to require a vain and useless thing to be done, as it would appear, that the filing with the clerk of a certificate of nomination, which he had, theretofore, issued and delivered to the candidate, would be; it can be truly said, if it was not the duty of the candidate to file with the clerk, not less than fifteen days before the election, his certificate of nomination, which had theretofore been issued to him by the clerk, and if the certificate was not meant for any purpose, except for the candidate to carry about in his pocket, it would be a very vain and useless thing to require the clerk to issue to him such a certificate of nomination, and still be required to place the name of the candidate upon the official ballot. As said in Hollon v. Center, etc., *supra,* the certificate of nomination is the evidence, which is provided by legislative authority, to the clerk of the court to justify him in placing the name of the candidate upon the ballot at the November election. A good reason is found in the statute for requiring the nominee to file his certificate of nomination with the county clerk, not less than fifteen days before the election, and not more than sixty days, although the same certificate had been issued to the candidate by the clerk. Subsection 5, of section 1550, *supra,* provides, among other things, as follows:

"That when a vacancy occurs after any nomination by death or otherwise, the governing authority of such party may provide for filling such vacancy and making such nominations, and when such nominations have been so made, the certificates of nomination shall be signed by the chairman and secretary of the governing authority of the party making same, and shall be filed in the same manner as to certificates of nomination at a primary election."

It will be observed, from this section, that the legislative authority contemplated, that, all certificates of nomination should be filed with the county court clerk, at the time prescribed, to entitle the name of the nominee to be printed upon the ballots. There is about four months, between the time, a clerk of a county court issues a nominating certificate and the November election, in which time, the nominated candidate may die, remove himself

from the county, be adjudged a lunatic, or a vacancy in the nomination might otherwise occur, of which the clerk would not have information or having information of the facts, they might be such, as he was unfit to decide correctly. If required to put upon the ballots the names of candidates to whom certificates had been issued as much as four months previous to the election, without substantial evidence, such as the filing of the certificate would produce, that the nomination was not vacant, confusion would probably be engendered, by having upon the ballots the names of men, who were not then the nominees and not entitled to places upon the ballots.

Hence, it is concluded that the plaintiff, H. G. Daniel, and the other nominees in whose interest he sues, all having failed to obey the mandatory provision of the statute, which required them, in order to have their names printed upon the official ballots, as candidates at the November election, to file with the clerk of the county court their respective certificates of nomination, not less than fifteen days preceding the election, were not entitled, under the law, to have a mandatory injunction against the clerk, requiring him to place their names upon the ballots, and therefore the injunction is dissolved.

All the members of the Court of Appeals sat with me in hearing and passing upon the motion, and all concur in the conclusion reached, except Chief Justice Settle, who dissents to so much of the opinion as holds, that it is necessary for a candidate, who was nominated without opposition, and whose certificate of nomination has been issued by the county court clerk, to file same with the clerk, fifteen days preceding the election, in order to be entitled to have his name printed upon the ballots to be used, at the November election.

Judge Carroll concurs in the conclusion reached; and is further of the opinion that Daniels on account of his laches was not entitled to have his name printed on the ballots, but he dissents from so much of the opinion as holds, that it is necessary for a candidate, who was nominated without opposition, to file with the clerk his certificate, before being entitled to have his name on the ballots.