## Bargo v. Tedders et al.

(Decided May 18, 1934.)

FLEM D. SAMPSON, VICTOR A. JORDAN and G. M. MANN-ING for appellant.

H. H. OWENS and J. J. TYE for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming.

E. V. Bargo and Abe Tedders were opposing candidates for the office of county clerk of Knox county at the November election, 1933. Tedders received, according to the official count, a majority of the votes cast, and Bargo filed this proceeding contesting his election. One of the grounds of contest was that the vote had not been properly counted by the board, and on the contest the vote was recounted. The recount increased somewhat Tedders' majority. The circuit court on the proof dismissed Bargo's petition. He appeals, relying on the following grounds for reversal:

1. Bargo and Tedders were opposing candidates in the August primary, 1933, for the Republican nomination for county clerk. Bargo received a majority of the vote in the primary, and was awarded a certificate. Tedders filed a petition as an Independent candidate for the November election, and Bargo insists that Tedders' name was improperly placed upon the ballot for the November election under section 1550-6, Kentucky Statutes, regulating primary elections, which provides:

"No applicant or candidate for any public office in the state of Kentucky who shall have filed his application or declaration under said section and who shall have been defeated for the nomination for any office thereunder, shall be eligible or permitted to run for the same office for which he was a candidate

under said section at any general election in this state to be held during the same year in which his said application and declaration was so filed and in which he was a candidate in any primary election under said act.''

But this statute was held unconstitutional in Broughton v. Pursifull, 245 Ky. 137, 53 S. W. (2d) 200, in which the precise question was involved as to placing the name of another county officer on the ballot. That opinion is conclusive here, and this objection cannot be sustained.

2. The petition for the placing of Tedders' name on the ballott was stamped filed "8/22/33." By the Act of 1918, c. 37 (see Kentucky Statutes, sec. 1456), such papers were required to be filed not more than 75 and not less than 45 days before the election. August 22 was 77 days before the election, and Bargo insists that the paper was not properly filed. But by the act of 1930 (see Acts 1930, c. 50, p. 153), the statute was changed, and it was provided that such paper should be filed with the county clerk not less than 15 days before the election. This statute controlled, as was held in Hall v. Combs, 252 Ky. 778, 68 S. W. (2d) 401. In fact, the proof shows clearly that the stamp 8/22/33 was a mistake, and that the papers were in fact filed on September 22, 1933. The circuit court properly overruled this objection.

3. Tedders was the acting county clerk. He was in doubt as to the proper way of printing the ballot, and, after he had arranged it, he submitted it to the Attorney General to know if it was correctly made out. The Attorney General returned it to him approved, and it was afterwards so printed. Bargo insists that the ballot was not properly made out. In the left-hand column of the ballot, under the rooster, the names of the Democratic Party's candidates were printed. In the next column, under the log cabin, the names of the Republican Party's candidates were printed. To the right of this, and at the head of the next column, was printed the picture of G. L. Dickinson and under it these words: "Independent Party for County Attorney, G. L. Dickinson." In the next column to the right was Tedders' picture and the words: "Independent Party for County Clerk, Abe Tedders." To the right of this was the picture of S. T. Jackson, and under this the words, "In-

dependent Party for Sheriff, S. T. Jackson,'' and to the right of this was the picture of G. M. McDonald, and under this the words, ''Independent Party for Jailer, G. M. McDonald.''

Appellant earnestly insists that the use of the words ''Independent Party'' was improper, and that these four names should have all been printed in the same column, but opposite the corresponding candidates for the office in the first and second columns. It is clearly shown that there was no Independent Party in Harlan county. The form of the ballot, under the admitted facts, could clearly have misled nobody. The word ''party'' is often used nowadays in the sense of the word ''person,'' and, where there is no party known as the Independent Party, the voters from the form of the ballot could not have failed to understand that these four men were simply running independently. Elections are not lightly set aside. Under the proof, Tedders' name was properly placed on the ballot. Bargo was in no wise prejudiced by the form of the ballots. There was no misunderstanding as to the facts; no one could reasonably be misled.

4. Bargo also complains that the ballots gave out in certain precincts. By section 1461, Kentucky Statutes, the book for each precinct ''shall contain at least fifty per cent. more ballots than the votes cast at such precinct at the preceding election.'' The county clerk had the ballots printed for each precinct, giving to each 50 per cent. more ballots than the votes cast at that precinct at the preceding election. The fact was that at the preceding election a full vote was not cast, and at the election in 1933 the ballots in twelve precincts gave out, and some voters were thus prevented from voting. But the clerk had followed the statute literally. Tedders carried nine of these twelve precincts, and there is no showing that the persons who did not vote by reason of the ballots giving out would have voted differently from those who did vote, or that the result of the election was affected by this.

5. Matt Mays was the Democratic candidate for county clerk who had received the nomination in the primary. Before the election, he withdrew, and Bargo charged that he did this under a contract with Tedders that he should receive from Tedders, as county clerk, work amounting to $600 a year from the emoluments of

345

the office if Tedders was elected. C. L. Hammons was a candidate for the Republican nomination for county clerk in the primary, and was defeated, and Bargo charged that after the primary Hammons and Tedders pooled their interest under a contract that in case Tedders was elected Hammons should receive one-half of the emoluments of the office and that Tedders in this way secured the support of Hammons and his large family, who were Republicans. Mays, Hammons, and Tedders each testified positively that there was no such agreement as that charged, and, while there is in the record proof of statements made by Mays and Hammons that such an agreement was made with Tedders, the court cannot say that the finding of the circuit court on this question is against the weight of the evidence, considering all the facts shown.

A like charge was made as to a promise by Tedders to Paul Bain and Nora Hale. But the proof as to these is also not sufficient to warrant a reversal of the judgment of the circuit court.

Tedders, during his candidacy, chartered a theater and put on a free show at which he presented his claims to the voters. This was some days before the election, and was simply a means of advertising his candidacy. He included the expense of this in his expense account, which he afterwards filed. Such a means of advertising one's candidacy is not a violation of the Corrupt Practice Act (Ky. Stats. sec. 1565b-1 et seq.).

The real thing that defeated Bargo was Tedders' unfortunate physical condition and the public sympathy for him by reason thereof. He was badly deformed in his legs, and had to get down on his hands to walk. He had practically no legs. His unfortunate condition brought about the result of the election rather than any of the things complained of.

Judgment affirmed.